1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ELEAZAR VILLEGAS,

11           Plaintiff,                    No. CIV S-02-2225 FCD EFB P

12       vs.

13   L. ROBINSON, et al.,

14           Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16       Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights

17   action pursuant to 42 U.S.C. § 1983.  He alleges that defendants (1) confiscated his legal

18   materials and filed false rule violation charges against him; (2) denied his access to the law

19   library, access to copies of his legal documents, and access to supplies such as paper, pens, and

20   envelopes; (3) circulated copies of his legal documents to the litigation coordinator for the

21   prison, the Attorney General, and to the inmates and staff members complained of; and (4)

22   threatened him with transfer and the filing of additional false rules violation charges if he

23   continued in his suit against the law library.  He contends these actions were taken in retaliation

24   for his having filed class actions regarding the law library at Mule Creek State Prison ("MCSP").

25       The matter is now before the court on defendants' October 27, 2006, motion for summary

26   judgment.  Defendants argues that the Eleventh Amendment bars plaintiff's claims for money

1

damages against the defendants in their official capacities.  Secondly, they argue that state employees are not "persons" within the meaning of § 1983.  Finally, they contend that plaintiff's claims for injunctive relief are moot because he is no longer housed at MCSP.

**I.     Procedural History**

Plaintiff filed his verified complaint on October 9, 2002.  Defendants' motion to dismiss that complaint was granted in part by the district judge on August 19, 2005.  Following the ruling, plaintiff's remaining claims are against defendants Robinson and Tice for alleged violations of plaintiff's right of access to the courts and for retaliation for the exercise of his constitutional rights.  Plaintiff's Verified Amended Complaint ("Am. Compl."), ¶¶ 16-20.  On October 27, 2006, defendants Robinson and Tice moved for summary judgment.

**II.    Facts**

At times complained of, plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison (MCSP) in Ione, California.  Am. Compl., at 2.  Defendant Robinson was a Senior Librarian and defendant Tice was a Supervisor of Academic Instruction at MCSP.  *Id*. at 3.

Plaintiff claims that on December 27, 2000, defendant Robinson confiscated plaintiff's legal documents that were attached to a petition for writ of habeas corpus, which petitioner was seeking to file in Amador County Superior Court regarding inadequate law library services.  Am. Compl., ¶ 16.

On April 3, 2001, the Chair of the Men's Advisory Council (MAC) for Facility A at MCSP responded to a complaint by plaintiff alleging inadequacies of the law library services on Facility A.  Defs.' Stmt. of Undisp. Facts ("SUF") 1.  Plaintiff complained about the law library not being open on time and being closed when it was scheduled to be open.  *Id*.; Defs.' Mot. for Summ. J., Exhibits in Support Thereof ("Defs.' Ex."), Exs. 1 & 2.1  He also complained that prisoners' work hours conflicted with the law library operating hours, that there were no legal supplies in the form of pens and envelopes, and that library access for prisoners on yard

restriction, C-status, or during lockdowns needed improvement.  SUF 1.  Review of an inmate

complaint by the Men's Advisory Council is not part of the inmate appeal process.   Cal. Code

Regs. tit. 15, § 3084.5; SUF 2.

On October 11, 2001, plaintiff sought permission to use excused time off ("ETO") from

his prison program in order to use the law library to meet a court deadline of October 19, 2001,

in one of his cases.  SUF 3; Ex. 2.  After speaking with his supervisor defendant Tice, Senior

Librarian Robinson denied the request based on Cal. Code Regs. tit. 15, § 3045.2(e).  SUF 4.

However, he did remind plaintiff that the law library was open on Saturdays.  *Id*.; Defs.' Ex. 2.

The law libraries at MCSP are open on Saturdays to meet the needs of inmates who have

assigned jobs or other program obligations during the hours the library is open Tuesdays through

Fridays.  SUF 5.  The libraries are closed on Sundays and Mondays.  *Id.*

In late 2001, plaintiff filed a petition for writ of habeas corpus in the Amador Superior

Court.  The petition challenged the adequacy of the law library in the administrative segregation

unit at MCSP. SUF 6; Defs.' Ex. A 5, 7.  Sometime on or before February 27, 2002, Robinson

and Tice refused his request to have copies of documents made.  SUF 7.  Plaintiff wanted to

attach the copies to his petition for review.  Compl., ¶ 16.

On June 7, 2002, Robinson informed plaintiff that institutional procedures prohibited

making copies of pages of books or newspaper or magazine articles.  SUF  8.  Robinson removed

one page from plaintiff' documents because he believed it might be in violation of MCSP rules

to copy it.  *Id*.  He then returned that page to plaintiff.  *Id.*

Later the same day, he saw plaintiff receiving copies of documents from an inmate

Library Assistant.  SUF 9.  He immediately went over to see what was happening because he had

previously instructed plaintiff to see him if he had any problems or for copies.  *Id.*  In reviewing

the copies that the inmate Library Assistant had given plaintiff, Robinson saw copies from

books, newspapers and/or magazines.  *Id.*  Robinson confiscated twenty-eight pages from

plaintiff' documents that he, Robinson, concluded violated the institutional procedure.  *Id.*

1    Plaintiff claims that this confiscation was done in retaliation for his filing a lawsuit against

2    Robinson and Tice, and that it also denied him his right of access to the courts.  Compl., Ex. A,

3    5-7.

4            Later, Robinson issued a Rules Violation Report ("RVR") over the June 7, 2002,

5    incident.  SUF 10.  Ultimately, the RVR was dismissed.  SUF 10.

6            In January 2002, plaintiff went to the library on Facility A, where he was housed, ten

7    times on ten different days.  SUF 11.  Nine times, he was signed in to do legal research, and

8    three of those times, he was on Preferred Legal User status.[1]  *Id.*  In February 2002, plaintiff

9    went to the library on Facility A ten times on nine different days.  SUF 12.  All ten times, he was

10   on Preferred Legal User ("PLU") status.  *Id.*

11           On February 27, 2002, plaintiff submitted Inmate Appeal Log No. MCSP-02-620.  SUF

12   13.  In it, he complained that Robinson and Tice refused to copy two newspaper articles  and

13   improperly disposed of extra copies of his legal papers by putting them in the trash rather than

14   giving them to him.  *Id.*  Plaintiff claims that this was done in retaliation for his filing a lawsuit.

15           On July 25, 2002, plaintiff submitted Inmate Appeal Log No. MCSP-02-1827.  SUF 14.

16   In it, he complained that Robinson refused to make copies of his legal documents and wrote two

17   Rules Violations Reports against him, both of which were dismissed.  *Id.*  He also complained

18   that on June 7, 2002, Robinson confiscated some of his legal documents.  *Id.*

19           Plaintiff states that on September 27, 2002, Robinson refused to make copies of legal

20   documents and, when he returned the documents to plaintiff, some of the documents were

21   missing, including a temporary restraining order.  Compl., p. 7.

22           Plaintiff filed his complaint in the present action on October 9, 2002.  SUF 15.

23

24           [1]  Under California Code of Regulations, Title 15, § 3122, regarding access to the inmate
     law library, inmates with established court deadlines shall be given higher priority to access law
25   library resources than those with longer deadlines or without a deadline.  A prison's system of
     "Preferred Legal Users" ("PLU") permits some prisoners with court deadlines greater library
26   access.  *Wilkerson v. Marshall*, 53 F.3d 341 (9th Cir. 1995).

On October 27, 2002, when he was in administrative segregation, plaintiff submitted an inmate appeal at the informal level of review.  SUF 16.  In it, he stated that he was constantly denied access to the law library or its services by LTA McDonald.  *Id.*  Defendant Robinson granted the appeal in part, stating: "Ad/Seg Library staff stated that your library access has not, and will not be denied and/or impeded."  *Id.*

The inmate canteen is the primary source of legal supplies such as legal envelopes and paper, which are obtained just like other correspondence supplies.  SUF 17.  Indigent inmates are permitted to obtain legal supplies, like envelopes and lined legal paper, from the mail room at no cost to the inmate.  *Id.*

The law libraries at MCSP provide blank white typing paper to inmates who are conducting legal research while they are in the library.  SUF 18.  They also make other supplies, such as pens and white-out, available to the inmates while they are in the law library.  *Id.*  Those items are checked out by the inmates just as books are checked out to them.  *Id.*  When an inmate leaves the library, he must return the checked-out supplies.  *Id.*

On February 4, 2003, plaintiff was transferred from MCSP to California State Prison, Los Angeles County ("CSP-LAC").  Am. Compl., ¶ 37; SUF 19.

**III.   Standards**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district
> court of the basis for its motion, and identifying those portions of
> "the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any," which it
> believes demonstrate the absence of a genuine issue of material
> fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

1   judgment motion may properly be made in reliance solely on the 'pleadings, depositions,

2   answers to interrogatories, and admissions on file.'"  *Id.*  Indeed, summary judgment should be

3   entered, after adequate time for discovery and upon motion, against a party who fails to make a

4   showing sufficient to establish the existence of an element essential to that party's case, and on

5   which that party will bear the burden of proof at trial.  *See id.* at 322.  "[A] complete failure of

6   proof concerning an essential element of the nonmoving party's case necessarily renders all

7   other facts immaterial."  *Id.*  In such a circumstance, summary judgment should be granted, "so

8   long as whatever is before the district court demonstrates that the standard for entry of summary

9   judgment, as set forth in Rule 56(c), is satisfied."  *Id.* at 323.

10          If the moving party meets its initial responsibility, the burden then shifts to the opposing

11   party to establish that a genuine issue as to any material fact actually does exist.  *See Matsushita*

12   *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  In attempting to establish the

13   existence of this factual dispute, the opposing party may not rely upon the allegations or denials

14   of its pleadings but is required to tender evidence of specific facts in the form of affidavits,

15   and/or admissible discovery material, in support of its contention that the dispute exists.  *See*

16   Fed. R. Civ. P. 56(e); *Matsushita,* 475 U.S. at 586 n.11.  The opposing party must demonstrate

17   that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under

18   the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec.*

19   *Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the

20   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

21   nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

22          In resolving the summary judgment motion, all reasonable inferences that may be drawn

23   from the facts placed before the court must be drawn in favor of the opposing party.  *See*

24   *Matsushita*, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the

25   opposing party's obligation to produce a factual predicate from which the inference may

26   reasonably be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D.

Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

On August 15, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## IV.   Analysis

### A.  § 1983 Suit against Defendants in Their Official Capacities

Plaintiff sues defendants Robinson and Tice both in their individual and official capacities.  Am. Compl., ¶¶ 4, 5.  Defendants correctly summarize the applicable standards as follows:

> "[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court.  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. 459, 464 (1945)).  The bar remains in effect when State officials are sued for damages in their official capacity.  *Id.* (citing *Cory v. White*, 457 U.S. 85, 90 (1982); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)).  That is because "'a judgment against a public servant "in his official capacity" imposes liability on the entity that he represents . . . .'" *Id.* (citing *Brandon v. Holt*, 469 U.S.464, 471 (1985)).  Suits brought against state officers in their official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).

Defs.' Mot. for Summ. J., at 8:18-28.

Applying that standard here, it is apparent from the face of the complaint that defendants Robinson and Tice are sued for acts performed within their official capacities.  Accordingly, the claims for damages against Robinson and Tice are barred by the Eleventh Amendment.

**B.  Mootness of Claims for Injunctive Relief**

Defendants argue that plaintiff's claims for injunctive relief are moot because during the course of this litigation he was transferred from MCSP, where his claims arose, to CSP-LAC. Pointing to *Darring v. Kincheloe*, defendants correctly argue that a claim for injunctive relief is "moot when there is neither a 'reasonable expectation' nor a 'demonstrated probability' that the inmate will again return to the institution where the allegedly unconstitutional conduct occurred." *Darring v. Kincheloe*, 783 F.2d 874, 876 (9th Cir. 1985).  Because there is neither a reasonable expectation nor demonstrated probability that plaintiff will return to MCSP, his claim for injunctive relief is moot.

**C.  First Amendment Claims**

Plaintiff also sues defendants Robinson and Tice in their individual capacities.  He claims that they violated his rights under the First Amendment by retaliating against him for filing a lawsuit in state court regarding access to the law library, its services and materials, and by interfering with his right of access to the court in litigating that action.  His allegations are many. They reduce to claims that these two defendants confiscated his legal materials, denied him copies of his legal documents and access to the law library and needed supplies, and filed false administrative charges against him.  He also claims that defendants circulated copies of his legal documents to the litigation coordinator for the prison, the Attorney General, and to the inmates and staff members whom he had complained about.  Finally, he alleges that they threatened him with transfer and the filing of false administrative charge for rules violations if he continued in his suit against the law library.

The facts on which plaintiff relies to establish both the "access to the court" claim and the retaliation claim are essentially the same.  However, the elements that he must prove for each claim vary.  The important difference is that the claim of denial of access to the courts requires that he show that defendants acts affected the outcome of his then pending litigation.  The retaliation claim does not.  For the reasons discussed, plaintiff's evidence defeats summary

1  judgment as to the retaliation claim, but fails to establish a genuine dispute as to the "actual

2  injury" requirement of the access-to-the-court claim.  The court first addresses the retaliation

3  claim.

4          To prevail on his retaliation claim, plaintiff must prove facts showing that retaliation for

5  the exercise of protected conduct was the "substantial" or "motivating" factor behind the

6  defendant's conduct.  *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir.

7  1989).  He must also demonstrate an absence of legitimate correctional goals for the conduct he

8  contends was retaliatory.  *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995)(citing *Rizzo v.*

9  *Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)).  Verbal harassment alone is insufficient to state a

10  claim.  *See Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987).  Even threats of bodily

11  injury are insufficient to state a claim, because a mere naked threat is not the equivalent of doing

12  the act itself.  *See Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).  Mere conclusions of

13  hypothetical retaliation will not suffice.  Rather, a prisoner must prove "specific facts showing

14  retaliation because of the exercise of the prisoner's constitutional rights."  *Frazier v. Dubois*, 922

15  F.2d 560, 562, n. 1 (10th Cir. 1990).

16          It is undisputed that Robinson and Tice confiscated photocopies that plaintiff intended to

17  use as support in his lawsuit.  Defendants assert that they had legitimate penological reasons for

18  doing so.  Whether they should prevail as a matter of law on that issue is another matter.  It is

19  significant that Robinson, the Senior Law Librarian at the prison, and Tice confiscated

20  documents which, plaintiff alleges, were intended for use in support of his lawsuit challenging

21  the management of the library.  Robinson and Tice were named as respondents in that action –

22  the lawsuit that called into question their operation of the library.  That the defendants in that

23  case decided what evidence plaintiff may or may not submit in support of his lawsuit against

24  them is a fact that a reasonable jury could consider in deciding whether plaintiff's version of the

25  events (that his access to the court was impeded) is true.  A jury could reasonably infer that

26  either retaliation or obstruction of the lawsuit against them was a substantial or motivating factor

1   in taking away plaintiff's copies.  When that fact is coupled with the defendants' explanation for

2   the confiscation, the suggestion of retaliation increases.

3         They explain their motivation for confiscating the materials as the legitimate penological

4   goal of enforcing rules prohibiting inmates from copying (or having copied) certain kinds of

5   documents.  The explanation is problematic.  The documents plaintiff tried to attach as evidence

6   to submit to the court violates, they assert, institutional regulations.  As part of their explanation

7   they present a supplement to the Departmental Operations Manual, § 53060.6, that states that

8   "pages from books, magazines, and newspapers are not copied."  *See* Defs.' Ex. 8.  While that

9   may generally be the case, it does not speak to the specific issue presented here.  Regardless of

10  what the Departmental Operations Manual says about copying books and magazines, the manual

11  does not appear to establish a legitimate penological goal that is furthered by seizing plaintiff's

12  exhibits in a lawsuit against the prison officials.[2]  A jury could reasonably infer from these

13  circumstances either a retaliatory or obstructionist motive for the seizure.  Unless refuted, a jury

14  could reasonably rely on that inference to find a denial of access to the courts and/or retaliation

15  for activity protected by the First Amendment.  Defendants' attempt at an explanation has simply

16  not shed light on why the prison must confiscate copies intended to be filed as exhibits in a

17  lawsuit against the very officials who seized them.  Whatever the legitimate penological interest

18  is for such a policy, if indeed that is the policy, defendants have not demonstrated it on this

19  motion and there remains a disputed issue of material fact.

20        Further supporting an inference of retaliation is the fact that the Hearing Officer, who

21  conducted the hearing on the disciplinary charge plaintiff incurred for possessing the copies,

22  ////

23  ////

24

25        [2]  Robinson's explanation suggests that the manual authorizes prison staff to seize the
    exhibits if they conclude that they were copied for the inmate from a book, magazine or
26  newspaper regardless of whether the exhibit constitutes evidence relevant to pending litigation.

considered and rejected the very explanation that defendants assert on this motion.[3]  Among

plaintiff's claims is the allegation that, as a result of this dispute over the photocopies, defendant

Robinson filed a false rules violation charge against plaintiff on June 26, 2002.  The Hearing

Officer dismissed that charge in the interest of justice because "[t]he findings do not support the

charge. There was no evidence presented at the Hearing to support or prove there was any

unauthorized copies."  Defs.' Ex. 4.  Whether a jury in this action will find defendants' assertion

any more plausible remains to be seen.  But on this record, plaintiff plainly has presented

adequate evidence to overcome summary judgment.

Without question, a reasonable fact finder could conclude that retaliation for a lawsuit

against the defendants, not a legitimate penological goal, was the real reason for confiscating

plaintiff's exhibits.  Therefore, summary judgment must be denied as to plaintiff's retaliation

claim.

Although plaintiff has presented evidence which could reasonably support a finding that

he was hindered in his ability to pursue his state court action, and that the defendants retaliated

against him for filing and pursuing that action, the former claim requires proof of an element not

required of the retaliation claim.[4]  To prevail at trial on his "access to the court" claim he must

_____

[3]  Defendants attached as an exhibit a copy of the RVR and the disposition following the hearing on the charge.  *See* Defs.' Mot. for Summ. J., Exhibits Attached Thereto, Ex. 4.  In the RVR, Robinson stated that plaintiff had made copies from books, newspapers, and/or magazines, that MCSP procedure prohibits the making of such copies, and that he confiscated plaintiff's copies on that basis.  *Id.*

[4]  Inmates have a fundamental constitutional right of access to the courts.  *Lewis v. Casey*, 518 U.S. 343, 346 (1996).  The right is simply the "right to bring to court a grievance," and is limited to direct criminal appeals, habeas corpus proceedings, and civil rights actions challenging conditions of confinement.  *Id.* at 355.  Claims for its deprivation may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim).  *Christopher v. Harbury*, 536 U.S. 403, 412-15 (2002).  A prisoner alleging a violation of his right of access to the courts must demonstrate that he has suffered "actual injury." *Lewis*, 518 U.S. at 351.  This requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.  To prevail, plaintiff must demonstrate that he suffered an actual injury by being shut out of court. *Id.* at 351; *Harbury*, 536

1  prove that the hindrance, i.e. the seizure of his exhibits, resulted in his pleading being rejected or

2  some other "actual prejudice" with respect to the litigation he was trying to pursue. *Phillips v.*

3  *Hurst*, 477 F.3d 1070, 1076 (9th Cir. 2007).  His evidence in that regard is lacking.  His

4  summary allegations fail to show the "actual injury" required here.  *Id.* (quoting *Lewis*, 518 U.S.

5  at 349-50).  While his evidence has demonstrated that the seizure of his exhibits at least hindered

6  him in his pursuit of the litigation, he does not allege nor show with evidence that the outcome of

7  his litigation was affected as a result of defendants' actions.   He therefore has not demonstrated

8  an actual injury which is a required element of his claim for denial of access to the courts.  *See*

9  *Harbury*, 536 U.S. at 415; *Phillips*, 477 F.3d at 1076.  Accordingly, summary judgment must be

10  entered as to this claim

11         **D.  Qualified Immunity**

12         Defendants contend that, even if their actions amounted to a violation of plaintiff's rights,

13  the right was not clearly established, and they are therefore entitled to qualified immunity.

14  Qualified immunity protects "government officials ... from liability for civil damages insofar as

15  their conduct does not violate clearly established statutory or constitutional rights of which a

16  reasonable person would have known."  *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  In

17  *Saucier v. Katz,* the Supreme Court set out a two-step inquiry in determining whether an official

18  has qualified immunity. 533 U.S. 194, 201 (2001).  First, "taken in the light most favorable to the

19  party asserting the injury, do the facts show the officer's conduct violated a constitutional right?"

20   *Id*.  Second, the court must "ask whether the right was clearly established."  *Id.*  "The relevant,

21  dispositive inquiry in determining whether a right is clearly established is whether it would be

22  clear to a reasonable officer his conduct was unlawful in the situation he confronted."  *Id.*

23         Here, there is a genuine issue for trial as to whether defendants retaliated against plaintiff

24  for his exercise of his First Amendment right to file a lawsuit by confiscating his photocopies

25  _____

26  U.S. at 415.

1   and filing Rules Violation Reports against him.  This satisfies *Saucier's* first prong.

2          Whether the right at issue in a claim of qualified immunity is clearly established is

3   judged as of the date of the incident alleged and is a pure question of law.  In *Saucier,* the

4   Supreme Court held that the "clearly established" inquiry "must be undertaken in light of the

5   specific context of the case." 533 U.S. at 201.  Here, there was ample and clearly established

6   precedent to guide a reasonable officer in these circumstances.  Defendants Robinson and Tice's

7   actions in seizing plaintiffs exhibits occurred in the wake of the decisions in *Sorrano's Gasco,*

8   *Inc. v. Morgan,* 874 F.2d 1310, *Pratt v. Rowland,* 65 F.3d 807, and numerous prior and

9   subsequent cases.  With that clear guidance, a reasonable officer would know that responding to

10  an inmate's lawsuit against that officer by confiscating documents related to the litigation, and

11  then filing an unsupportable Rules Violation Report against the inmate would amount to

12  unconstitutional retaliation in violation of plaintiff's First Amendment rights.  Thus, plaintiff's

13  right not to be retaliated against for his filing of a lawsuit was clearly established at the time of

14  defendant's action.  Therefore, defendants are not entitled to qualified immunity from plaintiff's

15  retaliation claim.

16         For all the foregoing reasons, it is hereby RECOMMENDED that:

17         1.  Defendants' October 27, 2006, motion for summary judgment be denied as to

18  plaintiff's retaliation claim and granted in all other respects;

19         2.  Plaintiff be given 30 days to file a pretrial statement; and

20         3.  Defendants be given 20 days from the date of service of plaintiff's pretrial statement

21  to file a pretrial statement.

22         These findings and recommendations are submitted to the United States District Judge

23  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

24  after being served with these findings and recommendations, any party may file written

25  objections with the court and serve a copy on all parties.  Such a document should be captioned

26  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

1  within the specified time may waive the right to appeal the District Court's order. *Turner v.*

2  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

3  Dated:  February 26, 2008.

4

5                     EDMUND F. BRENNAN
                        UNITED STATES MAGISTRATE JUDGE